Filed 8/7/13  P. v. Mickens CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>CAVIAR DEFAZZIO MICKENS,<br><br>  Defendant and Appellant. | B240621<br><br>(Los Angeles County<br>Super. Ct. No. BA389275) |

        APPEAL from a judgment of the Superior Court of Los Angeles County,
Craig Richman, Judge.  Modified and, as modified, affirmed with directions.

        Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and
Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney
General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Toni R.
Johns Estaville, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Caviar Defazzio Mickens appeals from the judgment entered following his convictions by jury on two counts of corporal injury upon a cohabitant (Pen. Code, § 273.5, subd. (a); counts 1 & 7),[1] two counts of disobeying a domestic relations court order (§ 273.6, subd. (d); counts 3 & 8) with findings as to each of counts 3 and 8 that appellant's conduct involved an act of violence or a credible threat of violence and he suffered a prior conviction for disobeying a domestic relations court order, count 4 – criminal threats (§ 422), and count 5 – brandishing a replica gun (§ 417.4). The court sentenced appellant to prison for 4 years 8 months. We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

1. *The February 12, 2011 and April 24, 2011 Uncharged Offenses.*

Lindsey Lopez testified she and appellant dated, and the two occasionally lived together, from October 2010 to about May 2011.[2] On February 12, 2011, Lopez and appellant argued about an affair. The next day, Lopez reported the incident to Los Angeles Police Officer Jose Gutierrez. He testified she said the incident became physical. Appellant became upset because she was trying to leave. Appellant grabbed Lopez by the hair, punched her repeatedly in the arms, and punched her once on the forehead. Gutierrez saw injuries consistent with her report, i.e., abrasions, plus bruises on her arms. At trial, Lopez denied appellant pulled her hair or punched her. She testified appellant grabbed her arm but admitted she told police that appellant punched her arm.

On April 24, 2011, Lopez asked appellant to move out of the house and the two argued. Lopez testified she did not recall the argument becoming physical and, when police responded, her lip was not cut. Los Angeles Police Officer Ramon Gracia, Jr.

---

[1]     Subsequent statutory references are to the Penal Code.

[2]     Lopez's trial testimony consisted of her preliminary hearing testimony admitted into evidence because, outside the presence of the jury, she refused for personal reasons to testify at trial.

2

responded to the incident. He testified he saw a cut and broken skin on the right corner of Lopez's mouth, and Lopez was sad and scared.

2. *The May 7, 2011 Incident (Counts 4 & 5).*

a. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that on May 7, 2011, appellant drove Lopez in a car to 43rd and Wadsworth near a church. Lopez testified she was going to meet her friend Nancy (later identified as Nancy Figueroa). Appellant dropped off Lopez. Lopez saw Figueroa with a friend named Jasmine (later identified as Jasmine Reddix). Reddix later began arguing with appellant. Reddix, using profanity, told appellant he was not part of the neighborhood and he was from a different gang. Appellant told Reddix to shut up or he would call the police.

Appellant exited the car and retrieved a black device from the trunk. Lopez thought the device was a phone but did not remember. Appellant told Reddix to stay out of " 'our business,' " and appellant and Lopez drove away. Appellant did not push Lopez in the car, and she voluntarily left with him.

After the incident, Reddix repeatedly called Lopez. Reddix told Lopez that if Lopez gave money to Reddix, Reddix would not talk to detectives. Reddix came to the house where Lopez lived, pounded on the door, and demanded money. Reddix told Lopez that Reddix would assault Lopez if Lopez did not open the door.

Reddix testified as follows. On May 7, 2011, Reddix was shopping with Figueroa. Reddix had her one-year-old daughter with her. Lopez called Figueroa and asked Figueroa to call the police. Reddix later saw Lopez at 43rd and Wadsworth. Lopez was walking towards Reddix. Lopez was crying and her head was down. Reddix told her to ascend the stairs of the church. Reddix saw red spots, bruises, and scratches on Lopez, and saw bruises on Lopez's face, shoulder, and neck.

Appellant drove up to Reddix and said, " 'Bitch, who the fuck is you?' " Reddix replied, " 'Who the fuck is you?' " Appellant said, " 'Bitch, I'll shoot you right here,

3

right now, bitch.' " Appellant exited the car and removed a 9-millimeter handgun from the trunk. Appellant cocked the gun and told Lopez to come to him. He again told Reddix that he would shoot Reddix, and he pointed the gun at Reddix, her daughter, and Figueroa. Appellant later drove to Lopez and began fighting with her and trying to put her in the car. Lopez was crying " 'no, let me out.' " Appellant got Lopez in the car and drove away. Reddix denied calling Lopez and asking for money.

Figueroa testified she was shopping with Reddix when Lopez called Figueroa. Lopez was crying. Lopez told Figueroa that appellant had pushed and hit Lopez and that appellant was chasing Lopez on 43rd. Figueroa called the police. She later saw Lopez in front of the church. Lopez was crying and nervous. Figueroa did not see any injuries on Lopez.

Appellant argued with Reddix and said he was going to kill Reddix. He went to the trunk of his car, obtained a gun, and told Reddix that he was going to kill her. Appellant pointed the gun at Reddix. Reddix was upset because appellant had pulled out a gun in front of her daughter. At trial Figueroa denied remembering if she had seen appellant cock the gun, but admitted telling police that appellant had cocked it. When appellant and Reddix were arguing, Reddix was threatening appellant and told him that her boyfriend would come and shoot appellant.

On May 7, 2011, Lorenzo Merritt, a custodian of the church, was watering the church grounds when he saw a man and woman arguing near the church. The man exited a car, retrieved an object from its trunk, reentered the car, and left. Although Merritt did not see the man point the object at anyone, the woman was scared.

On May 7, 2011, Gracia received a call to go to 43rd and Wadsworth. Upon arrival, Gracia spoke to Reddix, who pointed to appellant. Appellant was in a car driving down the street and Gracia conducted a traffic stop of the car. Lopez was in it and was very scared. A black BB-gun that looked like a handgun was under the front passenger seat.

4

b. *Defense Evidence.*

In defense, appellant testified that on May 7, 2011, Lopez asked him to accompany her as she went to Nancy Figueroa. Appellant dropped off Lopez. Reddix later approached his car and said, " 'Who the fuck is you?' " Appellant responded with the same question. Reddix replied, " 'This is my neighborhood, '40s.' " Appellant indicated he did not care what gang she was from. Reddix told appellant that she was going to call her boyfriend and have him "fuck [appellant] up." Reddix got on the phone and told someone, " 'Come over here. This mother fucker's talking shit.' " Appellant drove off and Reddix said, " 'Take your bitch ass home.' "

Appellant stopped at a stop sign and Lopez entered the car. As Lopez opened the passenger door to enter, appellant went to the trunk and retrieved his cell phone and a pellet gun. He put the gun in his pocket, reentered the car, and threw the gun in the back on the floor. Appellant did not cock the gun, point it at Reddix, threaten her, or tell her that he was going to kill her.

2. *The July 17, 2011 Incident (Counts 7 & 8).*

a. *People's Evidence.*

Lopez testified the following as to count 7. On July 17, 2011, Lopez and appellant were inside her home. The two argued about his moving out and Lopez walked away. Appellant grabbed her arm to restrain her so she could listen to him. Appellant released her. Lopez suffered injuries that day because she had an " 'incident with a front screen door.' " She testified she did not remember if she tripped or exactly how it happened, but as she was trying to leave " '[she] hit [her] nose or . . . forehead with the door, and it caused a nosebleed.' " Lopez told police that appellant held her arm and, when he let go, she tripped and hurt herself with the door.

Edgar Salas testified that on July 17, 2011, he owned the duplex where Lopez lived, and he lived next door to her. On that date, Salas heard appellant and Lopez

5

fighting. Salas heard a struggle and Lopez asking for help. Salas testified he heard other noises from the other side of the wall.[3]

Los Angeles Police Officer Luis Lopez (Luis) testified that on July 17, 2011, he responded to the scene and heard a woman screaming for help from inside the residence. Los Angeles Police Officer Daniel Liem testified he went to the location and Lopez told him that she was trying to leave when appellant grabbed her left forearm and pulled her away from the front door to keep her from leaving. She tried to yank away from appellant, and that was when she hit the edge of the front door, causing her nose to bleed.

---

[3]     The prosecutor asked Salas what kind of noises and Salas replied, "Like she was being *choked*." (Italics added.) Appellant objected on speculation grounds and the court overruled the objection. However, the court asked the prosecutor to lay further foundation as to Salas's conclusion about the noises. The court admonished the jury that Salas could not have seen what was going on and was only describing what he had heard and his conclusion as to what it sounded like.

The prosecutor asked Salas to demonstrate the sound he heard that led to his conclusion. Salas testified without objection at the time that "You could hear as though she was being *choked* and she was asking for help." (Italics added.) The prosecutor asked Salas what about the noise made him think Lopez was being *choked*, and Salas testified without objection at the time that "You could hear. The wall is very thin. It's hollow. You could hear everything." Appellant subsequently renewed "[his] objection." The court did not then rule on the objection, nor did appellant then seek a ruling thereon. The court indicated it would permit the prosecutor to elicit additional testimony. The prosecutor asked if Salas could make the sound, Salas conducted his demonstration, and appellant objected to Salas's using his hands. The court did not then rule on the objection, nor did appellant then seek a ruling on his objection. Salas renewed his demonstration and later testified it was "like a deep throat sound." The court then sustained "[the] objection," struck "the response," and instructed the jury it heard the sound and was to draw its own conclusion as to whether it was the sound of someone being choked or something else. The court did not state whether, when the court referred to "the response," the court was referring to Salas's testimony to the effect Lopez was being choked or Salas's use of his hands during his demonstration. We conclude that, notwithstanding appellant's suggestion to the contrary, Salas's various testimony to the effect it sounded like Lopez was being choked was admitted into evidence, although the absence of that testimony would not affect the result in this case.

6

Liem saw Lopez bleeding from her nose, saw "giant blood" in her right nostril, and saw injuries on her left forearm.

People's exhibit No. 1E was a photograph depicting Lopez's left forearm on July 17, 2011. Liem testified the photograph depicted an injury to Lopez's left forearm. The photograph was admitted into evidence. Appellant, by the above acts, violated section 273.6, subdivision (d).

b. *Defense Evidence*.

In defense as to count 7, appellant testified that on July 17, 2011, appellant and Lopez argued. Appellant firmly grabbed her upper arm, told her to wait a minute, then released her arm. Lopez turned around and asked, " 'What?' " Lopez quickly turned around, tripped over a couch, and hit the door with her nose. Appellant helped her up and "at that point, her nose wasn't bleeding at that time when she hit her nose." Appellant did not grab her arm to keep her from leaving. Appellant had no idea how Lopez received the injury depicted in People's exhibit No. 1E. The prosecutor asked if it might have been where appellant grabbed her arm and squeezed. Appellant indicated no, said it could have been a hickey from where he had kissed her, but denied he was saying it was a hickey. Appellant denied he ever hit Lopez on July 17, 2011.

3. *The August 24, 2011 Incident (Counts 1 & 3).*

Lopez testified as to count 1 that on August 24, 2011, appellant came to Lopez's home. Lopez told appellant to leave and they argued. Lopez initially denied remembering if the argument turned physical. She later testified appellant grabbed and squeezed her arm. On August 26, 2011, Lopez reported the incident to police and, at that time, an officer saw a bruise on her upper left arm and a bruise on her right shoulder. Lopez went to police on August 26, 2011, because she found out appellant was seeing another woman and Lopez was upset.

Appellant, by the above acts, violated section 273.6, subdivision (d) (count 3). In defense as to count 1, appellant testified that on August 24, 2011, appellant never saw Lopez and had no contact with her.

7

## ISSUES

Appellant claims (1) the trial court erroneously failed to give a unanimity instruction as to counts 1 and 7, (2) there is insufficient evidence supporting his conviction on count 7, (3) the trial court's instruction on attempted criminal threats as a lesser included offense of count 4 was erroneous, (4) section 654 barred punishment on count 8, and (5) the abstract of judgment must be corrected to reflect the correct disposition as to count 3.

## DISCUSSION

1. *The Trial Court Did Not Prejudicially Err by Failing to Give a Unanimity Instruction.*

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty. [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*).)

*Jennings* also stated, "There are, however, several exceptions to this rule. For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one *transaction*' [citation], or 'when . . . the *statute* contemplates a continuous course of conduct of a series of acts over a period of time' (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224 [206 Cal.Rptr. 516] [*Thompson*]). There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime. [Citation.]" (*Jennings, supra,* 50 Cal.4th at p. 679, italics added.) (We will refer to the first and second continuous-course-of-conduct exceptions as the transaction and statutory exceptions, respectively.)

As to count 7 (involving the July 17, 2011 incident), the jury convicted appellant of a violation of section 273.5, subdivision (a). Section 273.5, subdivision (a) is an example of a statute that constitutes a statutory exception to the rule requiring a

8

unanimity instruction.  (*Thompson*, *supra*, 160 Cal.App.3d at pp. 224-226; cf. *Jennings*, *supra*, 50 Cal.4th at p. 679.)  No unanimity instruction was required as to count 7.  The same reasoning and result applies to count 1 (involving the August 24, 2011 incident).

Appellant argues *Thompson's* holding is erroneous.  We disagree.  In *Thompson*, a jury convicted the defendant of a violation of former section 273.5 (corporal injury to a spouse resulting in a traumatic condition).  (*Thompson*, *supra,* 160 Cal.App.3d at p. 221.)  *Thompson* held the statutory exception applied to a violation of that section with the result the trial court did not err by failing to give a unanimity instruction.  (*Id.* at pp. 224-226.)

*Thompson* relied in part on *People v. Ewing* (1977) 72 Cal.App.3d 714 (*Ewing*).  In *Ewing*, a jury convicted the defendant of a particular form of child abuse, i.e., abusing a child under circumstances likely to produce great bodily harm or death, a violation of former section 273a, subdivision (1).  (*Ewing*, at p. 716.)  *Ewing* held former section 273a, subdivision (1) could be violated by a continuous course of conduct or by a series of acts over a period of time; therefore, the trial court did not err by failing to give a unanimity instruction.  (*Ewing*, at p. 717.)

*Thompson*, citing *Ewing*, concluded the case in *Thompson* was "closely analogous to child abuse."  (*Thompson*, *supra,* 160 Cal.App.3d at p. 225.)  *Thompson* stated, "Like child abuse, this is a case where each individual act may not amount to a crime, but the cumulative outcome is criminal.  'It is the continuing course of abuse which leads to prosecution and conviction.'  [Citation.]"  (*Thompson*, at p. 225.)

Later, *Thompson* turned to statutory interpretation of former section 273.5 (corporal injury to a spouse resulting in a traumatic condition), the offense at issue in *Thompson*.  (*Thompson*, *supra,* 160 Cal.App.3d at p. 225.)  *Thompson* stated, "A comparison of the legislative history of the relevant child abuse (§ 273d) and spousal battering (§ 273.5) statutes demonstrates their similarity, and supports a conclusion that both are aimed at repetitious activity which culminates in prohibited conduct."  (*Ibid.*)

9

The particular form of child abuse at issue in former section 273d above was "willfully inflict[ing] upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition." (*Thompson*, *supra*, 160 Cal.App.3d at p. 225, fn. 4.) *Thompson* observed that, originally, former section 273d, using similar language, also proscribed spousal abuse. (*Thompson*, at pp. 225-226.) *Thompson* concluded, as a matter of statutory interpretation of former section 273.5 (corporal injury upon a spouse), that just as the above quoted child abuse under former section 273d was an ongoing crime with the result the statutory exception applied to the offense and a unanimity instruction was not required, former section 273.5 at issue in *Thompson* was such a crime and a unanimity instruction was not required. (*Thompson*, at pp. 225-226.)

Appellant argues *Thompson* erroneously relied on *Ewing*'s reasoning, and the *Thompson* court "read the wrong statute" because the child abuse at issue in *Ewing* was proscribed by former section 273a, subdivision (1) and not former section 273d. We reject the argument. Although *Ewing* involved a particular form of child abuse (former section 273a, subdivision (1)), *Thompson*, when *analogizing* to *Ewing*, did not expressly focus on *former section 273a, subdivision (1)*, but more generally on the fact the *child abuse* in *Ewing* and the violation of former section 273.5 at issue in *Thompson* each involved issues relating to a *continuing course of conduct*. In its *later statutory* interpretation of former section 273.5, *Thompson* never mentioned either (1) child abuse *proscribed by former section 273a, subdivision (1)* or (2) *Ewing*. Instead, *Thompson* simply compared child abuse under former section 273d and the offense at issue in *Thompson*, a violation of former section 273.5. Appellant concedes section 273d was "the true sister statute of section 273.5."

Moreover, even if the statutory exception does not apply to the violations of section 273.5, subdivision (a) at issue in counts 1 and 7, we note the following. As to count 7 (involving the July 17, 2011 incident), evidence of the February 12, 2011 and April 24, 2011 uncharged offenses was submitted to the jury as propensity evidence that appellant *engaged in domestic violence* as to, inter alia, the offense at issue in count 7

10

(and the jury was so instructed).**4** That is, *the domestic violence evidence was evidence appellant battered Lopez, causing injury to her*, as to count 7. We already have set forth in our Factual Summary pertinent facts from the People's evidence pertaining to that count.

We conclude from the propensity evidence, the People's evidence as to count 7, and the rest of the evidence in this case that on July 17, 2011, appellant personally applied force multiple times to Lopez resulting in the injuries (traumatic conditions) she received to her nose and left forearm. There was evidence Lopez was in a dysfunctional relationship with appellant but, in an effort to preserve it, she fabricated about whether, and/or how, appellant battered her and/or whether the battery caused injury to her. We are not obligated to accept the entirety of her testimony as to what happened.

In sum, there was substantial evidence that on July 17, 2011, appellant battered Lopez, causing injuries to her nose and left arm. As to count 7, appellant's acts of July 17, 2011, were so closely connected in time as to form part of one transaction; therefore, the transaction exception to the unanimity instruction rule applied (*Jennings, supra*, 50 Cal.4th at p. 679) and the trial court did not err by failing to give a unanimity instruction as to count 7.

Moreover, appellant's defense evidence as to count 7 was, in essence, he never hit Lopez or injured her on July 17, 2011. Appellant asserts in his reply brief he "offered two defenses to the *acts and injuries* alleged to have occurred on July 17, 2011." (Italics

---

**4** The court, using CALCRIM No. 852, instructed the jury, in relevant part, as follows. The People presented evidence appellant committed uncharged domestic violence on February 12 and April 24, 2011. "Domestic violence means abuse committed against an adult who is . . . a cohabitant, . . . [¶] Abuse means *intentionally* or recklessly *causing* or attempting to cause *bodily injury*, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else." The instruction later stated, "If you decide that the defendant committed the uncharged domestic violence**,** you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence, and based on that decision, also conclude that the defendant was likely to commit *and did commit the domestic violence charged in Counts 1, [and] . . . 7, . . . .*" (Italics added.)

11

added.)  Appellant asserts those defenses were that he did not batter her and, even if he did, he did not cause her injuries.  Therefore, appellant's defense(s) as to any of the various acts and resulting injuries constituting the crime charged in count 7 was the same.  For this reason as well, the trial court did not err by failing to give a unanimity instruction as to count 7.  (*Jennings, supra*, 50 Cal.4th at p. 679.)

Similarly, as to count 1 (involving the August 24, 2011 incident), evidence of the uncharged offenses was submitted to the jury as propensity evidence that appellant engaged in domestic violence as to, inter alia, the offense at issue in count 1 (and the jury was so instructed).  The domestic violence evidence was evidence appellant battered Lopez, causing injury to her, as to count 1.  We already have set forth in our Factual Summary pertinent facts from the People's evidence pertaining to that count.

We conclude from the propensity evidence, the People's evidence as to count 1, and the rest of the evidence in this case that on August 24, 2011, appellant personally applied force multiple times to Lopez resulting in the bruises (traumatic conditions) she received to her upper left arm and right shoulder.  Moreover, the reasoning of our analysis as to count 7 applies to count 1.  There was substantial evidence that on August 24, 2011, appellant battered Lopez, causing injuries to her upper left arm nose and right shoulder.  As to count 1, appellant's acts of August 24, 2011, were so closely connected in time as to form part of one transaction; therefore, the transaction exception to the unanimity instruction rule applied (*Jennings, supra*, 50 Cal.4th at p. 679) and the trial court did not err by failing to give a unanimity instruction as to count 1.

Moreover, appellant's defense evidence as to count 1 was, in essence, he never saw Lopez or contacted her on August 24, 2011.  Appellant asserts in his reply brief he offered two defenses as to the events of August 24, 2011, i.e., there was no altercation on that date and, even if the jury believed appellant touched Lopez on that date, he did not cause a traumatic condition.  Therefore, appellant's defense(s) as to any of the various acts and resulting bruises constituting the crime charged in count 1 was the same.  The

12

trial court did not err by failing to give a unanimity instruction as to count 1. (*Jennings, supra*, 50 Cal.4th at p. 679.)

Finally, even if the trial court erred by failing to give a unanimity instruction as to each of counts 1 and 7, it does not follow we must reverse the judgment. We believe the entirety of the evidence in this case (including the propensity evidence of the uncharged offenses, the reasonable inferences Lopez fabricated about what appellant did and his lack of responsibility for the injuries she received, and his undisputed offenses of disobeying domestic relations court orders (counts 3 & 8)), provided ample evidence appellant committed the offenses at issue in counts 1 and 7 with the result any instructional error was not prejudicial.[5] (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)[6]

2. *There Was Sufficient Evidence Supporting Appellant's Conviction on Count 7.*

Appellant claims there is insufficient evidence supporting his conviction on count 7. He relies on *People v. Jackson* (2000) 77 Cal.App.4th 574 (*Jackson*), which held a violation of section 273.5, subdivision (a) requires that the victim's injury result from direct physical contact by a defendant. (*Jackson*, at p. 575.) We reject his claim.

---

[5]    Appellant, for the first time in his reply brief, argues without citation to authority that, as a matter of law, a bloody nose cannot be a "traumatic condition" within the meaning of section 273.5, subdivisions (a) and (c). We reject the argument because it is perfunctorily raised (cf. *People v. Jones* (1998) 17 Cal.4th 279, 305) and because he made it for the first time in his reply brief. (Cf. *People v. Thomas* (1995) 38 Cal.App.4th 1331, 1334.) Even if we entertained the argument we would reject it. A "traumatic condition" within the meaning of the above subdivisions is "a condition of the body, such as a wound, or external or internal injury, . . . whether of a minor or serious nature, caused by a physical force." The jury reasonably could have concluded beyond a reasonable doubt that Lopez's bloody nose was such a wound and injury.

[6]    There is a split of authority concerning whether prejudice for any such instructional error is evaluated under the standard enunciated in *Watson* or *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705]. (E.g., *People v. Vargas* (2001) 91 Cal.App.4th 506 [*Watson* applies]; *People v. Milosavljevic* (2010) 183 Cal.App.4th 640 [*Chapman* applies].)

We have recited the pertinent facts as to count 7 in our Factual Summary, including the propensity evidence that appellant committed domestic violence as to that count. The jury reasonably could have concluded based on the entirety of the evidence in this case that appellant battered Lopez, causing injuries to her nose and left arm, and that, Lopez, in a dysfunctional effort to preserve their relationship, fabricated about whether appellant's acts caused her injuries. The jury was not obligated to believe her completely concerning what appellant did or how she was injured. Instead, the jury was entitled to accept or reject all or part of her testimony, all or part of the rest of the evidence, and draw all reasonable inferences concerning what appellant did and how Lopez was injured.

Our power begins and ends with the determination whether there is substantial evidence, contradicted or uncontradicted, to support the judgment. (*People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1181-1182.) We conclude there was sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that on July 17, 2011, appellant battered Lopez causing her nose to bleed and causing the injuries on her left forearm, i.e., there was sufficient evidence her injuries resulted from direct physical contact by appellant and that appellant committed corporal injury upon a cohabitant (count 7).

3. *The Trial Court Did Not Err by Giving the Modified CALCRIM No. 460.*

The trial court gave a modified CALCRIM No. 460 instruction pertaining to attempted criminal threats.[7] Appellant claims this was error. We conclude otherwise.

---

[7]    Section 21a states, "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." The modified CALCRIM No. 460 stated, "Attempted criminal threats is a lesser included offense of criminal threats. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took a direct but ineffective step toward committing criminal threats; [¶] AND [¶] 2. The defendant intended to commit criminal threats. [¶] A direct step requires more than merely planning or preparing to commit criminal threats or obtaining or arranging for something needed to commit criminal threats. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a

First, as our later discussion reveals, appellant is really arguing the instruction should have clarified or amplified the applicable law. A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. (Cf. *People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156 (*Palmer*).) The instruction was correct in law and responsive to the evidence. Appellant did not request clarifying or amplifying language concerning the instruction. Appellant waived his instructional issue. (Cf. *Palmer*, at p. 1156.)

Second, as to the merits, "The language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction [citation], and is ordinarily sufficient when the defendant fails to request further amplification. [Citations.] If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language. [Citation.]" (*People v. Cantrell* (1992) 7 Cal.App.4th 523, 543.)

The modified CALCRIM No. 460 contained a combination of language from the standard CALCRIM No. 460 instruction, plus statutory language from sections 21a and 422. The modified instruction contained statutory language from section 422 to the extent the instruction stated, "To decide whether the defendant intended to commit criminal threats, please refer to the separate instructions that I have given you on that

definite and unambiguous intent to commit criminal threats. It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt. [¶] A person who attempts to commit criminal threats is guilty of attempted criminal threats even if, after taking a direct step towards committing the crime, he or she abandoned further efforts to complete the crime or if his or her attempt failed or was interrupted by someone or something beyond his or her control. On the other hand, if a person freely and voluntarily abandons his or her plans before taking a direct step toward committing criminal threats, then that person is not guilty of attempted criminal threats. [¶] To decide whether the defendant intended to commit criminal threats, please refer to the separate instructions that I have given you on that crime."

15

crime." This quoted language referred to the modified CALCRIM No. 1300 instruction that the court gave to the jury.[8] The modified CALCRIM No. 1300 instruction essentially tracked the statutory language of section 422.

Third, appellant argues the modified CALCRIM No. 460 instruction did not "properly convey the applicable law of attempted criminal threats, as defined by the Supreme Court in [*People v. Toledo* (2001) 26 Cal.4th 221 (*Toledo*)]." *Toledo* indicated that a previous discussion in *Toledo* had set forth examples demonstrating that "in most instances the crime of attempted criminal threat will involve circumstances in which the defendant in fact has engaged in *all* of the conduct that would support a conviction for criminal threat, but where the crime of criminal threat has not been completed only because of some fortuity outside the defendant's control or anticipation (for example, because the threat is intercepted or not understood, or because the victim for some reason does not actually suffer the sustained fear that he or she reasonably could have sustained under the circumstances)." (*Toledo*, at p. 234.)

Insofar as appellant is arguing the modified CALCRIM No. 460 instruction did not "properly convey the applicable law of attempted criminal threats, as defined by the Supreme Court in *Toledo*" because the instruction did not convey that the crime of criminal threats might not be completed "only because of some fortuity outside the

---

[8] CALCRIM No. 1300 stated, in relevant part, "The defendant is charged in Count 4 with having made a criminal threat in violation of Penal Code section 422. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Jasmine Reddix; [¶] 2. The defendant made the threat orally; [¶] 3. The defendant intended that his statement be understood as a threat; [¶] 4. The threat was so clear, immediate, unconditional, and specific that it communicated to Jasmine Reddix a serious intention and the immediate prospect that the threat would be carried out; [¶] 5. The threat actually caused Jasmine Reddix to be in sustained fear for her own safety or for the safety of her immediate family; [¶] AND [¶] 6. Jasmine Reddix's fear was reasonable under the circumstances. [¶] . . . [¶] Sustained fear means fear for a period of time that is more than momentary, fleeting, or transitory. [¶] . . . [¶] Immediate family includes children."

16

defendant's control or anticipation" (*Toledo*, *supra*, 26 Cal.4th at p. 234), we reject the argument for two reasons. The first is the modified instruction stated a direct step was "an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance *outside* the plan had not interrupted the attempt." (Italics added.) The second is the modified instruction stated a person could be guilty of attempted criminal threats even if the person's attempt "failed or was interrupted by someone or something beyond his or her control." That language was adequate.

Insofar as appellant argues the inadequacy of the modified instruction "is brought into greater relief" by the trial court's failure to instruct the jury that it could have convicted appellant "of attempted criminal threats even though he had completed all of the *acts* to satisfy the substantive crime" (italics added), we reject that argument. "When evaluating jury instructions, we follow familiar rules. 'Jury instructions must be read together and understood in context as presented to the jury. Whether a jury has been correctly instructed depends upon the entire charge of the court. [Citations.]' [Citation.]" (*People v. Brock* (2006) 143 Cal.App.4th 1266, 1277.)

The modified CALCRIM No. 460 instruction told the jury that an attempt required a "direct step" and thoroughly discussed that concept. The modified CALCRIM No. 1300, part of the entire charge, instructed on the elements of the offense of criminal threats, including the element of the required act, i.e., the required threat (absent any other elements). In particular, the modified CALCRIM No. 1300 instructed that the required threat (absent any other elements) occurred when appellant "willfully threatened to unlawfully kill [Reddix] or unlawfully cause great bodily injury" to Reddix and the "threat was so clear, immediate, unconditional, and specific that it communicated to [Reddix] a serious intention and the immediate prospect that the threat would be carried out." (See *Toledo*, *supra*, 26 Cal.4th at pp. 227-228, 232.)

We presume the jury correlated and followed these instructions (*People v. Sanchez* (2001) 26 Cal.4th 834, 852) and therefore understood appellant could commit attempted criminal threats by committing the "direct step" (i.e., the act of the required threat as

17

previously discussed (absent any other elements)) with the requisite intent. Nothing more was required.

Finally, appellant argues the trial court's error in instructing with the modified CALCRIM No. 460 instruction was prejudicial because the evidence cast significant doubt on Reddix's claim she was in sustained fear and, during deliberations, the jury sent the court a note asking "is a threat considered lawful self-defense if it is in response to an opposing threat?"[9]

However, whether Reddix was in "sustained fear" was an element of the completed offense of criminal threats, but was not an element of attempted criminal threats.[10] As long as appellant committed the requisite threat (as previously discussed) with the requisite intent, the fact that the intended *consequence* of sustained fear did or did not eventuate was not dispositive of whether he committed attempted criminal threats. In light of this, appellant has failed to explain how the trial court's failure to amplify the modified CALCRIM No. 460 instruction was prejudicial. Nor has appellant

---

[9] In response, the court told the foreperson in the presence of the jury that "In order for self-defense to apply, there has to be a threat of imminent serious bodily injury. That's what the instruction says. A self-defense is not a defense to criminal threats." (*Sic*.) The foreperson indicated the court answered the question.

[10] As *Toledo* observed, "Under the provisions of section 21a, a defendant properly may be found guilty of attempted criminal threat whenever, acting with the *specific intent* to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action. Furthermore, in view of the elements of the offense of criminal threat, a defendant acts *with the specific intent to commit the offense of criminal threat* only if he or she *specifically intends* to threaten to commit a crime resulting in death or great bodily injury *with the further intent* that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution *so as to reasonably cause the person to be in sustained fear* for his or her own safety or for his or her family's safety." (*Toledo*, *supra*, 26 Cal.4th at pp. 230-231, italics added.)

adequately explained how the fact the court answered the jury's question indicated the failure to amplify was prejudicial.[11]

4. *Section 654 Bars Punishment on Appellant's Conviction on Count 8.*

Appellant's prison sentence included a three-year middle term for his conviction on count 1 (§ 273.5, subd. (a)) with a concurrent three-year middle term for his conviction on count 3 (§ 273.6, subd. (d)). During the sentencing hearing, after the court imposed the sentence on count 3, the court indicated there was a "654 issue" and later stated it would "avoid the issue entirely and stay the sentence on count 3." However, when the court imposed a consecutive subordinate term of one year on count 7 (§ 273.5, subd. (a)), the court did not stay sentencing on count 8 but instead imposed a concurrent three-year middle term on count 8 (§ 273.6, subd. (d)).

Respondent concedes section 654 barred punishment on count 8. We accept the concession. By committing the offense as issue in count 7, appellant committed the offense at issue in count 8. Just as the court stayed punishment on count 3, the court should have stayed punishment on count 8 pursuant to section 654. (Cf. *People v. Sanders* (2012) 55 Cal.4th 731, 743-744.)[12]

5. *The Abstract of Judgment Must Be Corrected.*

As mentioned, during the sentencing hearing the trial court stayed the sentence on count 3 pursuant to section 654. However, the abstract of judgment erroneously reflects the trial court imposed a concurrent three-year prison term on count 3. Respondent concedes the abstract of judgment must be corrected to reflect the correct disposition as to count 3. We accept the concession. (Cf. *People v. Humiston* (1993) 20 Cal.App.4th 460, 466, fn. 3.)

---

[11]    We assume without deciding attempted criminal threats is a lesser included offense of criminal threats.

[12]    Neither party requests a remand for resentencing; therefore, we do not address the issue.

19

## *DISPOSITION*

The judgment is modified by staying execution of sentence on appellant's conviction for disobeying a domestic relations court order in violation of Penal Code section 273.6, subdivision (d) (count 8) pending completion of his sentence on his remaining convictions, such stay then to become permanent, and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

20